NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AARON B., *Appellant*,

*v.*

ASHLEY H., A.B., A.B., *Appellees*.

No. 1 CA-JV 20-0147
FILED 9-29-2020

Appeal from the Superior Court in Maricopa County
No. JS519298
The Honorable Lindsey G. Coates, Judge *Pro Tempore*

**AFFIRMED**

APPEARANCES

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Ashley Higbee, Chandler
*Appellee*

_____

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

_____

**W I L L I A M S**, Judge:

**¶1**         Aaron B. ("Father") appeals the juvenile court's order terminating his parental rights to Au.B. and Al.B. (collectively, the "Children"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**         Ashley H. ("Mother") and Father's relationship began in 2010 and ended in 2013. They never married and characterized their relationship as "on and off." Their two children were born in 2011 and 2013, respectively. Mother is now married to Joel H. ("Stepfather").

**¶3**         Between 2015 and 2017, Mother, Stepfather and the Children moved back and forth between California and New Mexico. Before leaving California initially, Mother and Father entered into a stipulated agreement ("Agreement") establishing a parenting schedule and awarding each parent "joint legal custody."[1] A separate order required Father to pay child support, which, the parties maintain, was amended through "a side agreement." Regardless, Father was inconsistent in paying child support and has not done so since September 2018.

**¶4**         Between 2014 and 2017, Father regularly went long periods of time without seeing or contacting the Children. In 2015, Father moved to Arizona. Approximately two years later, Mother, Stepfather and the Children also moved to Arizona. Despite the Children's increased proximity to Father, his interactions with them remained inconsistent. Between May 2017 and April 2018, Father did not have any contact with the Children, which Father contends was due to his work schedule. In 2018, while Father was unemployed because of a work injury, he had occasional

_____

[1] Although the Agreement only pertained to the oldest child, the parties believed it applied to both children and treated it as such.

2

weekend visits with the Children. Mother relayed her concern that one child, in particular, demonstrated negative and defiant behavior following visits with Father, as well as her concern for the Children's safety following a seizure Father suffered during a weekend visit in 2018. Father's last contact with the Children was in January 2019.

¶5 In June 2019, Mother petitioned for termination of Father's parent-child relationship. The juvenile court conferred with the California courts from which custody and support orders had previously been issued, and jointly determined that Arizona had jurisdiction to proceed under the Uniform Child Custody and Jurisdiction Enforcement Act.[2] *See* A.R.S. §§ 25-1001 to -1067. Following an adjudication hearing, the juvenile court terminated Father's parental rights based on abandonment, also finding termination was in the Children's best interests. Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶6 We review a severance ruling for an abuse of discretion, accepting the juvenile court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to affirming the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

---

[2] The juvenile court had jurisdiction to grant the severance as: (1) Arizona was the home state of the Children, (2) the Los Angeles superior court and the Victorville superior court agreed to relinquish jurisdiction, and (3) the juvenile court found that the Children, Mother and Father no longer resided in California. *See, e.g., Angel B. v. Vanessa J.*, 234 Ariz. 69, 74, ¶ 16 (App. 2014).

*I.     Reasonable Evidence Supports the Juvenile Court's Finding that Father
        Abandoned the Children*

¶7        "To justify termination of a parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533," and find, by a preponderance of the evidence, "that termination is in the best interest[s] of the child[ren]." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *accord* Ariz. R. P. Juv. Ct. 66(C). Abandonment, as defined in § 8-531(1), is one statutory ground for termination:

> [T]he failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

Abandonment is measured by a parent's conduct, not by that parent's subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18. Accordingly, it is the parent's "burden to act," *id.* at 251, ¶ 25, and where the parent fails to provide reasonable support, maintain regular contact with the child, provide normal supervision, or makes only minimal efforts to communicate with the child, the court may find that the parent has abandoned the child, *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010).

¶8        Although a parent "may not restrict the other parent from interacting with their child and then petition to terminate the latter's rights for abandonment," *Calvin B. v. Brittany B.*, 232 Ariz. 292, 297, ¶ 21 (App. 2013), where circumstances prevent a parent from exercising traditional methods of bonding with the child, the parent "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary," *Michael J.*, 196 Ariz. at 250, ¶ 22.

¶9        Relying upon *Calvin B.*, Father contends he made more than minimal efforts to support and maintain contact with the Children and that Mother prevented him from interacting with the Children. In *Calvin B.*, this Court observed that, despite attempts by mother to prevent father from interacting with his children, the father "vigorously asserted his legal rights to see his son." 232 Ariz. at 298, ¶ 29 (quoting *Michael J.*, 196 Ariz. at 250, ¶ 22). There, the father actively sought more involvement in his child's life

than the mother would allow; for example, he petitioned for joint custody, obtained an order establishing a fixed amount of parenting time, and despite legal and social interference by the mother, he managed up to ten visits with his child a year. *Id.* at 297, ¶¶ 22-25.

¶10 Here, however, unlike *Calvin B.*, Father had joint legal custody and an Agreement establishing a parenting schedule. Nevertheless, Father went substantial periods of time without contacting the Children and did not adhere to the terms of the Agreement, nor take responsibility as joint legal custodian of the Children. Father was inconsistent in financially supporting the Children and has not done so since 2018. And, while the record demonstrates that Mother occasionally did not respond to Father's messages seeking information about the Children, Mother's actions do not rise to the level of interference required to establish a defense to abandonment. Father had an obligation to act and a duty to vigorously pursue a relationship with his Children, which he did not do.

¶11 Because reasonable evidence supports the juvenile court's finding that Father abandoned the Children, on this record, the court did not err.

II. *Reasonable Evidence Supports the Juvenile Court's Finding that Terminating Father's Parental Rights Was in the Children's Best Interests*

¶12 The juvenile court must also find, by a preponderance of the evidence, that terminating the parent-child relationship is in the children's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). In conducting the best interests inquiry, the juvenile court must find that the children would either "benefit from a severance *or* be harmed by the continuation of the relationship." *In re Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

¶13 Father contends the Children would not be harmed by a continuation of the parent-child relationship because the Children "would remain with Mother and Stepfather and their needs would continue to be met." However, where severance of the parent-child relationship will benefit children, the best interests determination may also be satisfied. *Id.* at 369, ¶ 17.

¶14 Here, the juvenile court found that termination was in the Children's best interests, in part, because Stepfather "fulfills the role of father figure for the [C]hildren;" is "emotionally bonded to the [C]hildren and committed to meeting their needs;" "the [C]hildren refer to Stepfather

as their father;" and Stepfather "plans to adopt the children." *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016) ("When a . . . child's needs [are being met] and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests."); *see also Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (a court "may properly consider in favor of severance" factors that include "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child").

¶15  Because reasonable evidence supports the juvenile court's finding that the Children's needs are being met in Mother and Stepfather's care, and that the Children are prospectively adoptable by Stepfather, the court did not err in concluding that termination was in the Children's best interests.

## CONCLUSION

¶16  For the foregoing reasons, we affirm. As the prevailing party on appeal, Mother may recover her costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA